UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NESCO RESOURCE LLC,                                                                       Plaintiff,

v.                                                                  Civil Action No. 3:20-cv-768-DJH-RSE

ROXANNE REID and SUPERIOR
STAFFING LIMITED LIABILITY
COMPANY,                                                                              Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Nesco Resource LLC filed this action against its former employee, Roxanne Reid, and Reid's new business, Superior Staffing Limited Liability Company, seeking to prevent Reid and Superior from unfairly competing with Nesco. (Docket No. 1) The Court granted Nesco's motion for a temporary restraining order (D.N. 7) and then a preliminary injunction against Reid, finding that Nesco had demonstrated a substantial likelihood of success on its claims. (D.N. 32) Meanwhile, the defendants filed a motion to dismiss (D.N. 20), and Superior filed a counterclaim against Nesco (D.N. 22), which Nesco moves to dismiss (D.N. 42). For the reasons explained below, the Court will deny Defendants' motion to dismiss the complaint and grant Nesco's motion to dismiss the counterclaim.

**I.**

Nesco provides staffing services via branch offices located throughout the United States. (D.N. 1, PageID # 3-4) Reid was hired by Nesco in September 2015 and promoted to branch manager of the company's Bardstown, Kentucky office in 2019. (D.N. 1, PageID # 4; D.N. 22, PageID # 187) As part of her employment, Reid executed an employment agreement acknowledging that the job might give her access to Nesco's confidential or proprietary

1

information and agreeing to certain restrictions on her use or disclosure of that information, as well as restrictions on her freedom to compete with Nesco or to solicit its employees or customers after the end of her employment. (D.N. 1, PageID # 5-7; D.N. 22, PageID # 187)

Reid was terminated on May 13, 2020. (D.N. 1, PageID # 4; D.N. 22, PageID # 189) Approximately three months later, she and her brother formed Superior Staffing Limited Liability Company—which, like Nesco, provides staffing services to area businesses. (D.N. 1, PageID # 8; D.N. 22, PageID # 190) Concerned that Reid and Superior were engaging in unfair competition, Nesco filed this lawsuit, alleging breach of contract by Reid as well as tortious interference with contractual relations or prospective economic advantage and misappropriation of trade secrets by both defendants. (D.N. 1, PageID # 9-15) Defendants move to dismiss the complaint for failure to state a claim and lack of subject-matter jurisdiction (D.N. 20), while Nesco moves to dismiss Superior's counterclaim (D.N. 42).

## II.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint [or counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint or counterclaim whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

**A.    Defendants' Motion to Dismiss**

Defendants first argue that Nesco fails to state a plausible claim for relief under the Defend Trade Secrets Act, thereby eliminating the DTSA as a basis for subject-matter jurisdiction under 28 U.S.C. § 1331. (D.N. 20-1, PageID # 152-53) Specifically, Defendants contend that Nesco has failed to allege that any trade secrets Reid may possess were misappropriated within the meaning of the DTSA because there is no allegation that she acquired them through improper means. (*Id.*, PageID # 153-55, 157-61; D.N. 45, PageID # 338-40)

The DTSA creates a private cause of action for "[a]n owner of a trade secret that is misappropriated." 18 U.S.C. § 1836. For purposes of the Act, "misappropriation" is defined to include

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>> (i) used improper means to acquire knowledge of the trade secret;
>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>> (iii) before a material change of the position of the person, knew or had reason to know that—
>>> (I) the trade secret was a trade secret; and
>>> (II) knowledge of the trade secret had been acquired by accident or mistake[.]

§ 1839(5).

Thus, contrary to Defendants' assertion, acquisition "by improper means" is not the only type of misappropriation.[1] (*See* D.N. 20-1, PageID # 158-60; D.N. 45, PageID # 338-40) While Reid may have acquired the alleged trade secrets through legitimate means (her employment with Nesco), Nesco alleges that Reid had signed an agreement restricting her use or disclosure of those secrets (D.N. 1, PageID # 5, 7) and that she nevertheless used the information to "to contact, solicit, and target Nesco Resource's customers" after her termination. (*Id.*, PageID # 7; *see id.*, PageID # 7-9) These allegations fit neatly within subsection (5)(B)(ii) of the DTSA: according to the complaint, Reid disclosed—and both defendants used—Nesco's trade secrets without the latter's consent, despite knowing that their knowledge of the trade secrets was "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret" (in Reid's case) or "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret" (in Superior Staffing's case).[2] § 1839(5)(B)(ii)(II)-(III).

---

[1] Defendants rely on unpublished decisions from other circuits in support of their argument. (*See* D.N. 20-1, PageID # 158-60) Those decisions disregard the plain language of the DTSA—specifically, § 1839(5)(B)(ii)(II) and (III)—and are not binding on this Court.

[2] In addition to the contractual duty created by Reid's employment agreement, Reid likely owed a common-law fiduciary duty to Nesco arising from her position of trust with the company. *See Vivid Impact Co. v. Ellis*, No. 3:17-CV-509-JHM, 2017 U.S. Dist. LEXIS 189459, at *8 (W.D. Ky. Nov. 16, 2017) ("Kentucky courts are willing to find a fiduciary relationship between an employer and employee when the employee has a position of trust, the freedom of decision, and access to confidential corporate information." (quoting *Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-CV-429, 2015 U.S. Dist. LEXIS 14990, at *18-*19 (W.D. Ky. Feb. 9, 2015))); *Serv. Drywall Co. v. Commonwealth Walls, Inc.*, No. 3:06-CV-372-S, at *5-*7 (W.D. Ky. Apr. 26, 2008) (citing *INVESCO Institutional (N.A.), Inc. v. Johnson*, 500 F. Supp. 2d 701, 708-09 (W.D. Ky. 2007) (finding common-law fiduciary duty owed by branch manager who "was given oversight and control over the operations of [plaintiff]'s Louisville office as well as access to [the company]'s confidential information")).

Defendants also assert in passing that Nesco fails to adequately allege the existence of trade secrets under the DTSA. (*See* D.N. 44-1, PageID # 152-53, 161) The Act defines "trade secret" to mean

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

§ 1839(3).

Here, the complaint alleges that "[a]s part of her duties, Reid had access to and used information of Nesco Resource that is confidential and proprietary, including information regarding Nesco Resource's clients, potential clients, pricing, and business development strategies"; that "[a]ll of this information is confidential and proprietary, is not publicly known, has been generated and cultivated over many years, and gives Nesco Resource a substantial competitive advantage over its competitors"; that "Nesco Resource engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information," including requiring Reid and other "employees who were exposed to trade secrets and confidential and proprietary information . . . to sign written agreements that restricted their ability to use or disclose that information and to use password protection for their computers" (D.N. 1, PageID # 5); and that Reid signed an employment agreement setting out her nondisclosure obligations. (*Id.*, PageID # 5, 7) Nesco thus has alleged the existence of business information that it took reasonable measures to keep secret and that derives value from being kept secret. *See* § 1839(3).

In sum, the Court finds that Nesco has plausibly alleged a violation of the DTSA. *See Prudential Def. Sols., Inc. v. Graham*, No. 20-11785, 2020 U.S. Dist. LEXIS 202677, at *8-*13 (E.D. Mich. Oct. 30, 2020) (analyzing misappropriation claim under Michigan Uniform Trade Secrets Act and finding DTSA claim sufficient based on same analysis in light of similarity between MUTSA and DTSA (citing *RGIS, LLC v. Gerdes*, 817 F. App'x 158, 162 (6th Cir. 2020))). The Court therefore has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 and need not address Defendants' argument that the amount in controversy falls below the jurisdictional threshold. (*See* D.N. 20-1, PageID # 152-53, 161-64)

**B.      Nesco's Motion to Dismiss**

Superior asserts claims of breach of contract, tortious interference with contractual relations or prospective economic advantage, and breach of the implied covenant of good faith and fair dealing. (D.N. 22, PageID # 191-93) Each claim falls short.

**1.      Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**

Under Kentucky law, a claim for breach of contract consists of three elements: "1) [the] existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *KSA Enters. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 460 (6th Cir. 2019) (quoting *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)). The existence of a contract is also an essential element of a claim for breach of the covenant of good faith and fair dealing. *See Am. Gen. Life Ins. Co. v. Harshman*, No. 2013-129-WOB-REW, 2015 U.S. Dist. LEXIS 124207, at *23 (E.D. Ky. Sept. 16, 2015) ("[A] party can only breach the covenant of good faith and fair dealing where a valid contract exists." (citing *Quadrille Bus. Sys. v. Ky. Cattleman's Assoc.*, 242 S.W.3d 359, 365 (Ky. Ct. App. 2007))). In general, "[a] contract cannot be enforced by a person who is not a party to it or in privity" with a party. *Prime Finish,*

*LLC v. Cameo, LLC*, 487 F. App'x 956, 959 (6th Cir. 2012) (quoting *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004)).

Here, the only contract identified by Superior is the employment agreement between Reid and Nesco. (*See* D.N. 22, PageID # 191) The counterclaim does not allege that there was privity of contract between Nesco and Superior; more importantly, it does not contain facts demonstrating that privity exists. In its response to the motion to dismiss, Superior offers only the following four sentences: "Superior Staffing is in privity of contract based on its relationship with Reid. Reid was a party to the Employment Agreement. Nesco breached the contract by terminating Reid. Nesco, based upon that breached contract, has sued Reid and Superior under the restrictive covenant provisions[] and caused injury to Nesco [sic]." (D.N. 50, PageID # 470) This argument seems to suggest that Nesco created privity between itself and Superior by suing Superior. But Superior cites no authority in support of its position, and the Court is aware of none. In any event, the argument is based on a false premise; Nesco sued only Reid for allegedly violating the restrictive covenants, not Superior. (*See* D.N. 1, PageID # 9-11) Moreover, the only breach alleged by Superior is Nesco's termination of Reid's employment (*see* D.N. 22, PageID # 192), but Superior's alleged injury does not arise from that purported breach: the counterclaim asserts that Superior has suffered damages from "[t]he enforcement of the injunctive relief" in this case. (*Id.*) Superior thus has not adequately alleged either the existence of a contract or damages resulting from the alleged breach, and its breach-of-contract claim fails. *See KSA Enters.*, 761 F. App'x at 460. And because Superior has not alleged that it had a contractual relationship with Nesco, it likewise fails to state a claim for breach of the implied covenant of good faith and fair dealing. *See Prime Finish*, 487 F. App'x at 959; *Harshman*, 2015 U.S. Dist. LEXIS 124207, at *23.

### 2. Tortious Interference with Contractual Relations or Prospective Business Advantage

Superior's tortious-interference claim also fails. Under Kentucky law, a claim of tortious interference with a prospective business advantage consists of six elements: "(1) the existence of a valid business relationship or expectancy, (2) that the defendant was aware of this relationship or expectancy, (3) that the defendant intentionally interfered, (4) that the motive behind the interference was improper, (5) causation, and (6) special damages." *CMCO Mortg., LLC v. Hill (In re Hill)*, 957 F.3d 704, 713-714 (6th Cir. 2020) (citations omitted). Similarly,

> a claim for tortious interference with a contract under Kentucky law requires pleading (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) intent by the defendant to cause a breach, (4) and conduct which caused a breach, (5) that resulted in damages, (6) in the absence of any privilege or justification to excuse that conduct.

*Act for Health v. United Energy Workers Healthcare Corp.*, 784 F. App'x 295, 302 (6th Cir. 2019) (citing *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky. Ct. App. 2012)).

Here, Superior alleges that "[a]s a result of the injunctive relief based on a breached Agreement, Nesco Resource has tortiously interfered with Superior Staffing's contractual and business relationships and prospective relationships"; that "Nesco engaged in such conduct in a willful and malicious manner and with an improper motive and through improper means"; that "[a]s a direct and proximate result of this conduct, Superior Staffing has suffered damages, including special damages in the form of lost revenues and profits and legal fees and costs"; and that "[b]ecause Nesco acted willfully, wantonly, fraudulently and with oppression, Superior Staffing is entitled to punitive damages." (D.N. 22, PageID # 192-93)

The Court is skeptical that an injunction issued following the appropriate legal inquiry could constitute tortious interference by the party who sought it—a proposition for which Superior notably cites no authority. (*See* D.N. 50, PageID # 471; D.N. 22, PageID # 192) In any event, the

counterclaim does not identify any contract or business relationship with which Nesco allegedly interfered, much less that Nesco was aware of specific relationships and intended to interfere with them.³ Nor does the counterclaim describe any such interference or link it to damages suffered by Superior. (*See generally* D.N. 22) Because Superior's tortious-interference claim merely consists of conclusory statements unsupported by facts, it cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  Defendants' motion to dismiss the complaint (D.N. 20) is **DENIED**.

(2)  Nesco's motion to dismiss Superior's counterclaim (D.N. 42) is **GRANTED**.

May 20, 2021

David J. Hale, Judge
United States District Court

---

³ Superior asserts in response to the motion to dismiss that "[t]he Counterclaim states that Nesco was aware of Superior's contracts with businesses, including Think Packaging and Lee Building Products." (D.N. 50, PageID # 471) Superior provides no citation in support of this assertion (*see id.*), and a careful review of the counterclaim reveals no such allegation. (*See generally* D.N. 22)